IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ALEJANDRO FIERRO MALDONADO, § | | |
| 80969-280 § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | EP-14-CV-255-KC-RFC | |
| § | | |
| WEST TEXAS DETENTION FACILITY; § | | |
| WEST TEXAS HEALTH SERVICE; § | | |
| HEALTH SERVICE SUPERVISOR; § | | |
| WEST TEXAS HEALTH SERVICE § | | |
| EMPLOYEES 1-100; § | | |
|     Defendants. § | | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the Court is the *pro se* civil rights complaint filed *in forma pauperis* by Plaintiff, Alejandro Fierro Maldonado, and Defendants' motion to dismiss or alternatively motion for summary judgment. After due consideration, and for the reasons discussed below, the court recommends that Defendants' motion be granted and that judgment be entered for Defendants; Plaintiff's claims are unexhausted and fail to state a claim upon which relief could be granted.

## PROCEDURAL HISTORY

Plaintiff submitted a motion to proceed *in forma pauperis* with his civil rights complaint in this Court on July 7, 2014. (Doc. 1) After supplementation, Plaintiff's motion was granted, his complaint was filed, and Defendants were served. (Docs. 2-21) Defendants filed an answer on August 21, 2014. (Doc. 22) On October 22, 2014, Defendants filed a motion to dismiss or alternatively for summary judgment. (Doc. 25) Plaintiff has not responded to Defendants' motion.

1

Plaintiff's correspondence to the Court on October 31, 2014, neither addressed any of the issues in his complaint nor responded to any of the arguments in Defendants' motion. (Doc. 26)

## PLAINTIFF'S COMPLAINT

Plaintiff claims that Defendants, acting within the course and scope of their duties at the West Texas Detention Facility, deprived Plaintiff of his right to be free from cruel and unusual punishment under the Eighth Amendment when they were deliberately indifferent to his serious medical needs by failing to provide him adequate medical care while he was detained at that facility in 2012. (Docs. 5-1; 8:4) Plaintiff also believes he suffered medical negligence and racism. (Doc. 5-2:2) Plaintiff contends that he has no adequate remedy at law. (Doc. 5-1:9) Plaintiff seeks general, special, exemplary, and punitive damages, interest, costs, attorney fees, and any further relief allowed by law. (Doc. 8:4)

Plaintiff's alleged serious medical condition is kidney disease, or severe kidney problems including a tumor in his kidney. (Doc. 5-1:2) Plaintiff alleges that although a physician at a hospital in El Paso recommended that Plaintiff see an oncologist and urologist in August 2012, medical staff at the West Texas Detention Facility refused to refer him to a specialist and refused to provide him adequate medical treatment regarding his kidney disease. *Id*. He contends that due to the tumor in one of his kidneys, he should have been seen by an oncologist and urologist and been given a biopsy in order to obtain a correct diagnosis. *Id*. Plaintiff alleges constant pain; and asserts that it had been twenty-two months without treatment when Plaintiff filed his complaint. (Doc. 5-2:3)

In his response to the Court's questionnaire, Plaintiff also seeks to maintain a class action challenging the constitutionality of a federal statute pursuant to the Federal Tort Claim Act. (Doc. 5-1:6-7) He states that defendants include elected and qualified members of the United States

Marshals Service, federal employees, and citizens of El Paso County. *Id*. He includes the United States of America, the Attorney General of the United States, and the United States Marshal Service as defendants pursuant to the Federal Tort Claim Act. *Id*.

Plaintiff alleges in part that he was denied the benefit of hospitalization and medical care due to a residency requirement in the state of Texas—a provision requiring as a condition for hospitalization and medical care that a person reside in a federal facility for one year immediately preceding admission and application for care—and that each time Plaintiff has applied for medical care, Defendants' Board of Supervisors refused to provide the care requested because Plaintiff had not been confined to the Bureau of Prisons prior to pretrial proceedings. (Doc. 5-1: 6-8) He claims that such provisions and practices violate the privileges and immunities, the equal protection, and the due process clauses of the Fourteenth Amendment. *Id*. at 8-9.

## PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff alleges that he first experienced problems with his kidneys in January 2012 when he was detained at the West Texas Detention Center in Sierra Blanca, Texas. (Docs. 5-1:2; 5-2:1) He claims that he suffered from kidney infection, fever, and severe kidney pain while there. (Doc. 5-1:2) Plaintiff had pain and fever from January to May; during which time all he received was Tylenol. (Doc. 5-2:1) He saw a doctor at the West Texas Detention Facility; he was examined and the doctor gave him a written order for a sonogram. *Id*.

In early May, he was taken to the hospital in El Paso to get the sonogram. (Doc. 5-2:1) In June, the doctor gave Plaintiff the result; the doctor told Plaintiff that he was not sick and to not worry. *Id*. The doctor said that the swelling in his abdomen was normal and gave Plaintiff Tylenol,

3

Motrin, and a pill to relax the muscles. *Id*. Plaintiff began to feel worse, adding cramps to the other symptoms, so bad at times that he could not get out of bed without help. *Id*.

Plaintiff began to have blood in his urine on August 12, 2012. (Docs. 5-1:2, 5-2:1) Plaintiff was taken to the health clinic where a nurse examined his urine, which had blood, and notified the doctor. (Doc. 5-2:1) They told Plaintiff that they were going to order that he be taken to the hospital. *Id*.

On August 23, 3012, Plaintiff was transferred from Sierra Blanca to El Paso for a court appearance before United States District Judge Frank Montalvo. (Docs. 5-1:3; 5-2:1) Plaintiff explained his medical problems to Judge Montalvo, who entered a court order for Plaintiff to be tested at the hospital. *Id*. Plaintiff was transferred to the University Medical Center, a hospital in El Paso, that same day and had a blood test, urinalysis, and an MRI. (Doc. 5-2:1-2) The results on August 24th showed serious pathology, and the examining doctor told him that he needed to see an oncologist and urologist. *Id*. Plaintiff had still not been seen by either specialist when he filed his complaint. (Doc. 5-1:3)

Judge Montalvo also ordered that Plaintiff be transferred from the West Texas Detention Facility in Sierra Blanca, Texas, to the Otero County Processing Center in Chaparral, New Mexico, so that Plaintiff could be closer to medical attention. (Doc. 5-2:1-2) At the Otero prison, the doctor examined Plaintiff and ordered that he be taken to a specialist to examine Plaintiff's kidneys. (Doc. 5-2:2) Plaintiff was never taken to see the specialist. *Id*. Instead, Plaintiff was transferred back to the West Texas Detention Facility in Sierra Blanca where he continued with the same symptoms. *Id*. The medical staff there checked his urine and it still had blood in it. *Id*. They gave Plaintiff some pills for the infection; Plaintiff's symptoms continued. *Id*. Plaintiff also began to have painful

headaches that would last all day. *Id*. He went to see the medical staff, but they told him that they could not do anything else. *Id*. Plaintiff then began to vomit blood. *Id*. No action was taken. *Id*

Plaintiff was transferred from El Paso to a prison in Alomogordo, New Mexico and then to the Dalby Facility in December 2012. (Doc. 5-1:3) Plaintiff's medical records, specifically the records from the El Paso hospital, were not transferred to the Dalby Facility. *Id*. Dr. Hartford, a physician at the Dalby Facility, examined Plaintiff on December 17, 2012, and recommended a continuation of medications prescribed for Plaintiff prior to his transfer. *Id*. at 4. Dr. Hartford examined Plaintiff again nine days later and noted that Plaintiff suffered from hypertension and abdominal pain. *Id*. Plaintiff told Dr. Hartford that he needed to see a specialist. *Id*. Dr. Hartford told Plaintiff that he did not have Plaintiff's medical records, but that he would request them. *Id*. Plaintiff signed an authorization for release of his medical records that same day. *Id*.

Plaintiff is no longer taking the medication they prescribed because it does nothing for him and he is concerned that it could further damage his liver and his medical records had not yet arrived. (Doc. 5-2:2) He had been given no further medical treatment at the Dalby Facility. *Id*.

Plaintiff alleges suffering pain in the abdomen and chest; soreness and numbness of the right side of his abdomen and kidney, which continued for approximately eighteen months following his release from the West Texas Facility; extreme shooting pains from the right kidney to the abdomen for approximately eighteen months, with the frequency subsiding after two years, but continuing intermittently; and injuries including blood in his urine. (Doc. 5-1)

# DISCUSSION

## I. Motion to Dismiss/Summary Judgment Standard

A motion to dismiss for failure to state a claim is treated as one for summary judgment where matters outside the pleadings are presented to and not excluded by the court. Fed. R. Civ. P. 12(d). Summary judgment is proper where the pleadings and evidence on file demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant carries this burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial. *Id.*, at 324-325. Conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find for [the nonmoving party], there is no genuine issue for trial, and summary judgment is proper. If, on the other hand, the fact-finder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (internal citations omitted).

## II. Failure to Exhaust Administrative Remedies

Defendants assert that Plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies. (Doc. 25:2-3)

The Prison Litigation Reform Act (PLRA) requires that an inmate must exhaust all available administrative remedies before he may maintain a suit in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes" and includes *Bivens* suits by federal prisoners. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of administrative remedies requires "proper exhaustion", e.g., compliance with deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 83-84, 90-91 (2006).

Defendants assert that Plaintiff failed to exhaust his administrative remedies because he failed to properly exhaust the grievance system provided at the West Texas Detention Facility. (Doc. 25:2-3, citing 25-1:1 ¶5 (Exh. A: Affidavit of Roxanne Campbell)) Campbell's affidavit states that Plaintiff "did not make any informal or formal complaints in compliance with the grievance procedure of the detention center." (Doc. 25-1, Exh. A at 1 ¶ 5)

Although Plaintiff states that there were an extensive number of inmate request forms submitted addressing his medical concerns, he acknowledges that he did not exhaust the grievance procedures. (Docs. 5:2, 8:3) He argues that he has good cause for failing to exhaust his grievance procedures, including the extreme nature of his medical condition, his inability to obtain legal

advice, and his limited access to the remedy procedure, which he claims did not exist, or if it did, was not familiar to him at the time. (Doc. 5:3)

Plaintiff does not provide any facts to support his allegation that he had limited access to the remedy procedures at the West Texas Detention Facility, or why he was not familiar with them. Plaintiff's suggestion that remedy procedures did not exist at the time is the most troubling. While Defendants provide copies of policies relating to offender grievance procedures, the documents state that they were last revised on October 2013. (Doc. 25-2:7-10) As such, they fail to reflect what the grievance procedures were when Plaintiff was detained at West Texas Detention Facility in 2012. However, Plaintiff does not contest that he failed to exhaust his remedies, nor does he point to anything he did to attempt to assert his grievances, even if the remedy procedure was not same as it was as revised on October 2013.

Further, a plaintiff must exhaust the BOP's administrative remedies under the FTCA claims procedure, which are distinct from the BOP's grievance procedure, before pursuing relief under the FTCA. 28 U.S.C. § 2675(a); 28 C.F.R. §§ 543.30-543.32; *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994). Plaintiff has neither asserted nor demonstrated that he exhausted the FTCA administrative claims procedure.

The Court finds that Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies. Alternatively, for the reasons stated below, Plaintiff's claims should be dismissed for failure to state a claim or on motion for summary judgment on the merits.

### III.   Failure to State a Claim

####   A.   Civil Rights under Section 1983 or *Bivens*

Defendants' motion also asserts that Plaintiff's complaint should be dismissed for failure to state a claim. (Doc. 25:3-5) Defendants maintain that the West Texas Detention Facility is a private correctional facility owned by Emerald Companies. (Doc. 25:6, 25-1:1) They argue that Plaintiff's complaint therefore fails to state a claim under 28 U.S.C. § 1983 because "any deprivation of his constitutional rights occurred as a result of persons acting under color of federal law and not under color of state law." *Id*. at 5.  Nor could the complaint raise a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Defendants argue, because *Bivens* does not provide a remedy for actions or omissions committed by private individuals and entities where the plaintiff has adequate remedies under state tort law. (Doc. 25:5, citing *Minneci v. Pollard*, 132 S.Ct. 617, 626 (2012)).

In *Bivens*, the Supreme Court held that an individual injured by a federal agent's alleged violation of the individual's constitutional rights may bring an action for damages against the agent, providing deterrence against and relief for the deprivation of certain constitutionally guaranteed rights caused by a person acting under color of federal law. *Bivens*, 403 U.S. 388. In *Correction Services Corp. v. Malesko*, 534 U.S. 61 (2001), the Supreme Court declined to extend *Bivens* to allow recovery against a private corporation operating under contract with the BOP. In *Minneci*, the Supreme Court found that *Bivens* did not provide a plaintiff with a federal remedy against employees of a privately run federal prison for Eighth Amendment violations where the tort law of the state in which the inmate was incarcerated provided adequate remedies to protect his constitutional interests. *Minneci*, 132 S.Ct. at 626.

9

Although in his response to this Court's questionnaire, Plaintiff states that he has no adequate remedy at law, he has not responded to Defendants' motion with any argument as to why he would not have any adequate remedy at law. (Doc. 5-1:9) The Supreme Court in *Minneci* noted that specific authority exists "in every one of the eight States where privately managed secure federal facilities are currently located," which includes Texas, "indicating that state law imposes general tort duties of reasonable care (including medical care) on prison employees." *Minneci*, 132 S.Ct. at 624-25 (citing *Salazar v. Collins*, 255 S.W.3d 191, 198-200 (Tex. App. 2008)). The Supreme Court was unwilling to find state law an inadequate remedy simply because it may prove less generous than *Bivens* in some respects, because *Bivens* may be less generous in other respects; the Court determined that the available remedy does not need to be perfectly congruent with *Bivens*. *Minneci*, 132 S.Ct. at 625 (*citing Bush v. Lucas*, 462 U.S. 367, 388 (1983)). Just as in *Minneci*, Plaintiff cannot maintain this *Bivens* action against Defendants. Thus, the Court finds that Plaintiff failed to state a *Bivens* claim upon which relief could be granted against the named Defendants and such claim should be dismissed.

However, even if a *Bivens* action were available for Plaintiff to bring against Defendants, Plaintiff's allegations fail to state a constitutional claim. The Eighth Amendment[1] forbids cruel and unusual punishment, which in the context of the denial of medical treatment has been defined as

---

[1] Plaintiff refers to pretrial proceedings, to which the Fourteenth instead of the Eighth Amendment would apply, but the standards regarding medical treatment are identical for both pretrial and post conviction claims. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 636, 649-50 (5th Cir. 1996) (pretrial detainee must establish that officials acted with subjective deliberate indifference: that the official was aware of the facts from which an inference of substantial risk of serious harm could be drawn, that the official actually drew that inference, and the official's response indicated that he subjectively intended that harm to occur.); *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 473 (5th Cir. 1996) (standard for medical care of detainees derives from the Fourteenth Amendment).

deliberate indifference to the serious medical needs of prisoners amounting to unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). A prisoner must allege acts or omissions sufficiently harmful to evince deliberate indifference, an extremely high standard to meet. *Farmer v. Brennan*, 511 U.S. 825, 834, 847 (1994). To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," and (2) the defendant knew of and disregarded "an excessive risk to inmate health or safety." *Id.*, at 837. In other words, the prisoner must show that: "(1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm to occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-459 (5th Cir. 2001).

"Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview. Such matters are questions of tort, not constitutional law." *Snipes v. DeTella*, 95 F.3d 586, 590-91 (7th Cir. 1996) (*quoting Gamble*, 429 U.S. at 107). "Unsuccessful medical treatment, acts of negligence, [neglect], or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Coldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citation omitted). Even gross negligence does not rise to the level of deliberate indifference. *Hare*, 74 F.3d at 645.

> It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged

11

in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal citations and quotations omitted, alteration in original).

An inmate who has been examined by medical personnel on a number of occasions fails to set forth a valid showing of deliberate indifference to serious medical needs. *See Gamble*, 429 U.S. at 106. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Gobert,* 463 F.3d at 346 n. 24, *quoting Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (*per curiam*).

Defendants have submitted Plaintiff's medical records, which reflect that from the time he arrived at the West Texas Detention Facility in August 2011 to the time he left in December 2012: (1) Plaintiff was seen over eight times for chronic constipation and other maladies, and over eleven times for complaints related to kidney pain; (2) Plaintiff had a sonogram of his abdomen on May 4, 2012; (3) in August 2012 an appointment was made for an ultrasound to be done in September; and (4) repeatedly Plaintiff's vital signs were tested, medications were administered, lab tests were run. (Doc. 25-1)

Plaintiff has failed to show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Plaintiff's allegations amount to a disagreement with his medical treatment, which is a matter of medical judgment and at most a question of tort, not constitutional law. Because taken as a whole and viewed in the light most favorable to Plaintiff the

evidence in the record could not lead a rational trier of fact to find for Plaintiff, even if Plaintiff had stated *Bivens* claims against Defendants, Defendants would be entitled to summary judgment on such claims.

**B.  Claim under the FTCA**

In his response to the Court's questionnaire, Plaintiff stated that he wished to maintain a class action challenging the constitutionality of a federal statute pursuant to the Federal Tort Claim Act. (Doc. 5-1:6-7)  Plaintiff does not identify the residency statute he purports to challenge.  Plaintiff included several new defendants in his response, including the United States of America, the Attorney General of the United States of America, and the U.S. Marshal Service. (Doc. 5-1:7)  The only proper defendant in a claim under the FTCA is the United States of America.  *See Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1988).

As stated above, Plaintiff failed to exhaust the administrative procedures required to properly assert an FTCA claim in federal court, such that his FTCA claim must be dismissed.  Further, independent contractor prison doctors are not agents of the government for purposes of the FTCA; their actions cannot form the basis for an FTCA claim against the United States.  *See Minneci*, 132 S.Ct. at 626*; Lopez-Heredia v. University of Texas Medical Branch Hosp.*, 240 Fed. Appx. 646, 2007 WL 1991168 (5th Cir. 2007) (not published); *Menteer v. Applebee*, 196 Fed. Appx. 624 (10th Cir. 2006) (not published) (applying independent contractor theory to FTCA claim).  Thus, Plaintiff has failed to state a claim under the FTCA for which relief could be granted.  Such claim should be dismissed with prejudice.

## **CONCLUSION**

For the reasons stated above, it is the recommendation of this Court that Defendants' Motion to Dismiss/Motion for Summary Judgment be GRANTED and judgment be entered in Defendants' favor.

**SIGNED** and **ENTERED** on June 22, 2015.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN 14 (FOURTEEN) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT, SHALL BAR YOU, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE. FED. R. CIV. P. 72 (EFFECTIVE DEC. 1, 2009).**